**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

SHIVA STEIN,                                    :
                                                :
                    Plaintiff,                  :    Civil Action No. 1:21-cv-5959
                                                :
v.                                              :
                                                :    **COMPLAINT FOR VIOLATIONS OF**
FERRO CORPORATION, PETER T.                     :    **SECTIONS 14(a) AND 20(a) OF THE**
THOMAS, DAVID A. LORBER, ANDREW                 :    **SECURITIES EXCHANGE ACT OF**
M. ROSS, ALLEN A. SPIZZO, MARRAN                :    **1934**
OGILVIE, and RONALD P. VARGO,                   :
                                                :    **JURY TRIAL DEMANDED**
                    Defendants.                 :
--------------------------------------------------------  :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Ferro Corporation ("Ferro or the

"Company") and the members Ferro board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with

the proposed acquisition of Ferro by affiliates of PMHC II Inc. ("Prince").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on July 9, 2021 with the United States Securities and Exchange

Commission ("SEC") and disseminated to Company stockholders.   The Proxy Statement

recommends that Company stockholders vote in favor of a proposed transaction whereby PMHC

Merger Sub, Inc. ("Merger Sub") will merge with and into Ferro, with Merger Sub ceasing to exist and Ferro surviving as a direct or indirect wholly owned subsidiary of Prince (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Ferro common share issued and outstanding will be converted into the right to receive $22.00 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked Ferro stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, Lazard Frères & Co. LLC ("Lazard") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Ferro stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the closing of the Proposed Transaction will take place in this District; the proxy solicitor of the Company is headquartered in this District, and lastly, the Company's stock is traded on the New York Stock Exchange, which is also headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Ferro common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Peter T. Thomas has served as a member of the Board since April 2013 and is the Chairman of the Board and President and Chief Executive Officer of the Company.

11.     Individual Defendant David A. Lorber has served as a member of the Board since 2013 and Lead Director since 2018.

12.     Individual Defendant Andrew M. Ross has served as a member of the Board since 2016.

13.     Individual Defendant Allen A. Spizzo has served as a member of the Board since 2016.

14.     Individual Defendant Marran Ogilvie has served as a member of the Board since 2017.

15.     Individual Defendant Ronald P. Vargo has served as a member of the Board since 2009.

16.     Defendant Ferro is incorporated in Ohio and maintains its principal offices at 6060 Parkland Boulevard, Suite 250, Mayfield Heights, Ohio 44124.  The Company's common stock trades on the New York Stock Exchange under the symbol "FOE."

17.     The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

19.     Ferro produces and markets specialty materials in the United States, Europe, the Middle East, Africa, the Asia Pacific, and Latin America. It operates through two segments, Functional Coatings and Color Solutions. The Company offers frits, porcelain and other glass enamels, glazes, stains, decorating colors, pigments, inks, polishing materials, dielectrics, electronic glasses, and other specialty coatings. It also provides slurry-based polishing products for the semiconductor and optoelectronics industry; decorative coatings for glass and high-performance plastics coatings; and dielectrics and electronic ink products for component applications. The Company's products are used in appliances, electronics, automotive, industrial products, building and renovation, packaging, consumer products, sanitary, construction,

healthcare, food and beverage, information technology, energy, and defense industries. It markets

and sells its products directly, as well as through agents and distributors. Ferro was founded in

1919 and is headquartered in Mayfield Heights, Ohio.

20.     On May 11, 2021, Prince announced that it and Ferro had entered into a proposed

transaction:

> HOUSTON, May 11, 2021 /PRNewswire/ -- Prince International
> Corporation ("Prince"), a portfolio company of American Securities
> LLC, announced today that it is acquiring Ferro Corporation
> for $22.00 per share in cash, in a transaction valued at
> approximately $2.1 billion, including the assumption of debt, net of
> cash. The agreement has been unanimously approved by Ferro's
> Board of Directors.
>
> In conjunction with the closing of the transaction, the company will
> combine with Chromaflo Technologies, a premier global provider
> of colorant technology solutions and also an American Securities
> portfolio company. The combination of Prince, Ferro and
> Chromaflo will result in a global diversified business with sales of
> approximately $2 billion.
>
> "We are thrilled about combining Prince, Ferro, and Chromaflo,
> each a leader in their respective markets, to form a true global
> technology leader in color solutions, functional coatings and
> specialty minerals," said D. Michael Wilson, Prince CEO. "The
> combination will result in a company with unmatched competencies
> in particle engineering, glass science and color technology. It will
> enhance our ability, on a global scale, to deliver state-of-the art
> products and innovative solutions that enrich everyday life."
>
> The transaction is expected to close during the first quarter of 2022,
> subject to the approval of Ferro shareholders and the satisfaction of
> customary closing conditions, including applicable regulatory
> approvals.
>
> Morgan Stanley & Co. LLC and Barclays served as financial
> advisors for Prince International Corporation and Kirkland & Ellis
> LLP served as legal advisor. Lazard Freres & Co. LLC served as
> financial advisor for Ferro Corporation and Simpson Thacher &
> Bartlett LLP served as legal advisor.

* * *

21.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Ferro's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

22.     On July 9, 2021, Ferro filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Ferro Financial Projections*

23.     The Proxy Statement fails to provide material information concerning financial projections by Ferro management and relied upon by Lazard in its analysis. The Proxy Statement discloses financial projections for the Company prepared by Company management and extrapolations prepared by Morgan Stanley which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the

projections that Ferro management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24.     For the Company Projections, the Proxy Statement provides values for the non-GAAP (Generally Accepted Accounting Principles) financial metric Adjusted EBITDA but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

25.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

26.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the

residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

27.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Proxy Statement not misleading.

28.     In addition, the Proxy Statement fails to disclose the unlevered, after-tax free cash flows that Ferro was forecasted to generate in the nine months ended December 31, 2021 and between fiscal years 2022 and 2025 that were used by Lazard in its Discounted Cash Flow Analysis.

_Omissions and/or Material Misrepresentations Concerning Morgan Stanley's Financial Analysis_

29.     With respect to Lazard's _Precedent Transactions Valuation_ analysis, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the companies and transactions observed by Lazard in the analysis, including, among other things, (a) the enterprise value and EBITDA of each of the target companies; (b) the acquisition price of each transaction; (ii) the inputs and assumptions underlying the EV to EBITDA multiple range of 9.5x to 11.5x to Ferro's last twelve months adjusted EBITDA as of March 31, 2021.

30.     With respect to Lazard's _Public Trading Comparables Valuation_ analysis, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the companies observed by Lazard in the analysis

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31.     With respect to Lazard's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) implied terminal value of the Company as of December 31, 2025; (ii) the Company's estimated future unlevered, after-tax free cash flows for the nine months ended December 31, 2021 and between fiscal years 2022 and 2025; (iii) inputs and assumptions underlying the perpetuity growth rate of 1% to 2% to the normalized estimated 2025 unlevered, after-tax free cash flows and a perpetuity growth rate of 0% to the estimated 2025 unlevered, after-tax free cash flow generated by cost savings from restructuring programs and optimization initiatives, pension, restructuring and other cash charges; (iv) the basis for applying a discount rate of 9.0% to 10.0%; (v) the market data as of May 7, 2021 observed; (vi) the analysis of the weighted average cost of capital of the selected companies; (vii) estimated net debt and estimated noncontrolling interest of the Company as of March 31, 2021; (viii) Company share count data as of .

32.     With respect to Lazard's *Present Value of Future Share Price* analysis, the Proxy Statement fails to disclose: (i) projected net debt and noncontrolling interest based on the Projections; (ii) the inputs and assumptions underlying the NTM/EBITDA multiples of 8.1x to 10.1x to Ferro's estimated forward EBITDA from fiscal year 2021 to fiscal year 2024; (iii) the future enterprise value range for Ferro; (iv) equity value range; (v) the inputs and assumptions underlying the discount rate of 10.8%; (vi) the estimate of Ferro's cost of equity

33.     With respect to Morgan Stanley's *Multiples Paid* analysis, the Proxy Statement fails to disclose: (i) the implied fully-diluted enterprise value of the target companies; (ii) analyst estimates of the next-twelve-months EBITDA of the target companies; (iii) net debt and Series A preferred stock balances; and (iv) number of fully-diluted shares of the Company.

34.     With respect to Lazard's engagement as the Company's financial advisor, the Proxy Statement fails to disclose the amount of compensation earned by Lazard for services provided to Ferro and an affiliate of Price during the past two years.

35.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial

analyses that were prepared by Lazard and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

41.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of Ferro within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Ferro, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Ferro, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Ferro, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: July 12, 2021                              **MELWANI & CHAN LLP**

                                                    By:   /s *Gloria Kui Melwani*
                                                         Gloria Kui Melwani (GM5661)
                                                         1180 Avenue of the Americas, 8th Fl.
                                                         New York, NY 10036
                                                         Telephone: (212) 382-4620
                                                         Email: gloria@melwanichan.com

                                                         *Attorneys for Plaintiff*